United States Courts
Southern District of Texas
FILED

*April 25, 2025*

Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-20150

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2025

Lyle W. Cayce
Clerk

HARRIET PAYNE; CHARLES PAYNE, JR.; CAVIN PAYNE;
STEPHANIE PAYNE; BETTY MORRISON; KIZZ GOINS; KATANIA
DEARBORNE; ROBERT PAYNE,

*Plaintiffs—Appellees,*

*versus*

CITY OF HOUSTON, TEXAS,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-4686

---

Before GRAVES, HIGGINSON, and WILSON, *Circuit Judges.*

JAMES E. GRAVES, JR., *Circuit Judge:*[*]

Officer Christopher Cabrera, a police officer for the City of Houston
("the City"), was driving back to his station when he collided with a car
driven by Charles Payne, Sr. ("Payne"). Officer Cabrera had just booked a
suspect for driving while intoxicated ("DWI") and was hurrying back to his

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

station to complete the report and file charges. Officer Cabrera testified that when the collision happened, he was still assigned to the DWI call.

Payne died as a result of injuries sustained in the collision. Payne's relatives ("Appellees") filed this action, bringing a claim under the Texas Tort Claims Act ("TTCA"). The City moved to dismiss this claim based on governmental immunity, but the district court denied the motion. Because we agree that the City is not entitled to governmental immunity, we AFFIRM.

## BACKGROUND

### A.    Facts

This case involves the appeal of a denial of a Rule 12(b)(6) motion to dismiss. At the outset, the parties dispute the proper sources from which the Court may draw the "facts" for the purpose of evaluating the motion. Typically, in evaluating a Rule 12(b)(6) motion to dismiss, a court must accept the well-pleaded facts in the complaint as true and not consider facts outside the complaint. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, there are exceptions to this general rule, two of which are relevant here: (1) the district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and central to their claims (incorporation by reference)[1]; and (2) the district court may take judicial notice of public records, though it may not take judicial notice of "adjudicative facts" subject to reasonable dispute, which generally include the factual findings of another court.[2]

---

[1] *See id.*

[2] *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–31 (5th Cir. 1998); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664–65 (N.D. Tex. 2011) ("When a court takes judicial notice of public

It appears that the district court gleaned the facts solely from the well-pleaded complaint. But the City explains that this case was originally filed in state court, proceeded to the summary judgment stage, and was then nonsuited by Appellees. The City therefore urged the district court, and now urges this Court, to take judicial notice of the state court filings, specifically deposition and affidavit testimony attached as exhibits to the City's summary judgment motion, and construe any contradictions between the allegations in the complaint and the content in the state court filings in favor of the filings. *See generally Taylor*, 162 F.3d at 829 (explaining that a district court's refusal to take judicial notice is reviewed for abuse of discretion).

While this Court has approved of a trial court taking judicial notice of state court filings, this Court has not authorized taking judicial notice of the factual content within the exhibits of an untested motion for summary judgment. *Id.* at 831 (explaining that our court has never allowed a district court to accept as true the deposition testimony from a separate case). That is because such factual content, particularly testimonial evidence, is not beyond reasonable dispute. *Id.*

Relatedly, the City also suggests that some of the state court filings are incorporated by reference into Appellees' complaint. Appellees' complaint does reference Officer Cabrera's testimony and seemingly also references the deposition testimony of one of Appellees' experts, Steve Irwin. For a document to be "central" to a plaintiff's claims, this Court has indicated that it must be evidence the plaintiff substantially relies on to prove their claims. *Scanlan*, 343 F.3d at 537 (finding that a defendant-created report central to the defendant's defense was not central to the plaintiff's complaint); *In re*

---

documents or documents from another court, it may only take notice of the undisputed facts therein, which do not include 'facts' asserted in various affidavits and depositions.").

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (finding that a contract was central to the plaintiff's complaint in a breach of contract action); *see also Truong v. Magnolia Fleet, LLC*, 724 F. Supp. 3d 568, 574 (E.D. La. 2024) (explaining that the Fifth Circuit has not articulated a particular test for whether a document is central to a plaintiff's claims but that "[c]ase law does suggest . . . that a document satisfies the centrality component when it is necessary to establish an element of one of the plaintiff's claims" (citation omitted)). Even if the plaintiff relies on the document in their complaint, it matters that "the [document] alone is not central to their claims." *Scanlan*, 343 F.3d at 537.

The factual matter asserted in Officer Cabrera's testimony is "central" to the City's defense, not to Appellees' claim. *See id.* Officer Cabrera's testimony largely pertains to the circumstances surrounding the DWI call and his attempt to mitigate damage from the collision—all "facts" more relevant to the City's immunity defense than Appellees' claim.

The testimony of Irwin, one of Appellees' experts, is arguably a closer call. In his deposition, Irwin discusses a report that he prepared for Appellees regarding the drivers' speeds at the time of and leading up to the collision. Irwin further responds to a few questions from the City attorney regarding the presence of marijuana in Payne's system and Payne's failure to come to a complete stop at the intersection. However, it would be unusual to consider deposition testimony, and not the report, to be central to Appellees' claim. It also appears that Appellees are "relying on more than [this testimony] as evidence for their claims." *Id.* at 539. The summary judgment evidence contains another expert deposition that opines on whether Officer Cabrera's conduct was tortious. And lastly, Payne's marijuana use and failure to make a complete stop is certainly more pertinent to the City's ultimate liability defense rather than Appellees' claim. Therefore, we do not take judicial notice of these documents.

Relying solely on the complaint, we now set out the "facts" as follows: On December 26, 2021, Officer Cabrera, a police officer for the City of Houston, assisted in a call regarding a DWI suspect. The suspect was arrested and booked into a joint processing center in downtown Houston. After finishing the booking process, Officer Cabrera began driving back to his station to complete his report and file charges.

The City requires officers to file charges within two hours after booking a suspect. Officer Cabrera previously testified that it could take up to forty-five minutes to an hour for him to return to his station, so he was under time pressure to hurry back. Officer Cabrera further testified that, while en route back to the station, he "was still assigned to the call that [he] was dispatched to from 9-1-1, which was a priority two emergency call pertaining to [the] DWI."

On the drive back to his station, Officer Cabrera traveled northbound on North Shepherd Drive. North Shepherd Drive is known as an extremely dangerous road. It has six lanes with many stores, driveways, and crossings, and it has consistent vehicle and foot traffic. The speed limit is 35 MPH.

While proceeding down this road, Officer Cabrera reached a top speed of 70 MPH, with no lights or sirens activated on his police car. Payne was traveling southbound on North Shepherd Drive, and after having approached an intersection without a stoplight or stop sign, pulled into the left lane and signaled to make a left turn. Because Payne did not see any approaching vehicles, he attempted to make a left turn. While making this turn, he and Officer Cabrera collided. Immediately prior to the collision, Officer Cabrera was traveling at 70 MPH and had looked down at his laptop. He looked up as he collided with Payne. Payne suffered severe injuries from the crash and ultimately died. If Officer Cabrera had been going the speed limit, the collision would not have occurred.

## B.    Procedural History

Appellees filed this action in the Southern District of Texas, asserting *Monell* claims and a TTCA claim against the City of Houston. The City filed a motion to dismiss, which the district court denied in all respects. The City now appeals that decision as to the TTCA claim, arguing that it is entitled to governmental immunity.[3]

## STANDARD OF REVIEW

A district court's denial of a Rule 12(b)(6) motion premised on governmental immunity is reviewed de novo. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461–62 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) (citation omitted); *see* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

## DISCUSSION

"Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law" through clear and unambiguous language. *Finchum v. Nacogdoches Cnty.*, No. 23-40078, 2023 WL 7401400, at *1 (5th Cir. Nov. 8, 2023) (per curiam) (quoting *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019)); *see* Tex. Gov't Code § 311.034. The TTCA expressly waives governmental immunity in certain

---

[3] This Court has jurisdiction over denials of governmental immunity asserted by a Texas municipality pursuant to the collateral order doctrine. *See Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013); *Rhodes v. City of Arlington*, 215 F. App'x 329, 330–31 (5th Cir. 2007).

situations. TEX. CIV. PRAC. & REM. CODE § 101.025. Relevant to this appeal, the TTCA motor vehicle waiver waives governmental immunity for:

> property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law[.]

*Id.* § 101.021(1).

But there are exceptions to this waiver of immunity. The TTCA does not waive immunity:

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

*Id.* § 101.055(2). This is called the "emergency exception." The TTCA also does not waive immunity for "an action of an employee . . . responding to a 9-1-1 emergency call," unless "the action violates a statute or ordinance applicable to the action." *Id.* § 101.062(b). This is called the "9-1-1 exception."

The parties do not dispute that the motor vehicle waiver is generally applicable to the Officer Cabrera's conduct.[4] Rather, their dispute centers on

---

[4] Provided an exception to the motor vehicle waiver does not apply, the parties do not dispute that Officer Cabrera, who was driving within his scope of employment, would be personally liable under Texas law. And, as further discussed below, it cannot reasonably be disputed that Appellees sufficiently alleged proximate cause.

whether the City is nonetheless entitled to immunity because Officer Cabrera's conduct falls within the emergency or 9-1-1 exceptions. Specifically, they disagree as to: whether Officer Cabrera was "reacting" to an emergency situation or "responding" to an emergency or 9-1-1 call at the time of the collision; and whether Officer Cabrera was violating applicable laws at the time of the collision, such that his illegal actions ultimately caused the collision.[5] We address each in turn.[6]

### A. Officer Cabrera was not "reacting" to an emergency situation at the time of the collision.

The City first argues that Officer Cabrera was "reacting" to an emergency situation at the time of the collision. According to the City, the "emergency situation" occurred when Payne pulled out in front of Officer Cabrera, and Officer Cabrera "reacted" to the emergency situation because

---

[5] Unlike the 9-1-1 exception, which requires the officer to be complying with applicable laws and ordinances, the emergency exception requires the officer's action to be taken *either* in compliance with applicable laws or ordinances, or absent applicable laws and ordinances, without conscious indifference or reckless disregard. However, as further explained below, because the issue boils down to whether Officer Cabrera violated reckless driving laws, this becomes a distinction without a difference in this case.

[6] Secondarily, the City argues that we should at least reverse and render judgment dismissing Appellees' negligence per se theories to their TTCA claim because, it argues, negligence per se is not a cognizable theory under the TTCA. It is unclear whether negligence per se is a viable theory under the TTCA. *Compare Tex. Dep't of Crim. Just. v. Parker*, No. 10-18-00024-CV, 2020 WL 5833869, at *6 (Tex. App.—Waco Sept. 30, 2020, no pet.) (mem. op.) ("Parker identifies no section of the TTCA that waives immunity for claims based upon negligence per se.") *and Thoele v. Tex. Dep't of Crim. Just.*, No. 10-18-00249-CV, 2020 WL 7687864, at *6 (Tex. App.—Waco Dec. 22, 2020, no pet.) (mem. op.) (same), *with McDonald v. City of the Colony*, No. 2-08-263-CV, 2009 WL 1815648, at *7 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.) (suggesting negligence per se theories are viable under the TTCA) *and Cruz*, 2023 WL 8938408, at *11 (allowing a negligence per se theory to proceed under the TTCA and finding *Thoele* "inapposite"). But as "[n]egligence per se is not a separate claim existing independently from a common-law negligence claim," but rather "is merely one method of proving breach of duty," we need not resolve this issue. *Parker*, 2020 WL 5833869, at *5.

he allegedly began to brake and aim for the backside of the vehicle in an attempt to mitigate damage.[7] Appellees counter that the City's reading is a perverse construction of the emergency exception. We agree.

In interpreting a Texas statute, we generally apply the Texas rules of statutory construction. *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000). "[W]e begin with the statute's text." *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010). The TTCA does not define the term "emergency situation," but Texas courts have given the term a broad, though not unlimited, interpretation. *City of Houston v. Cruz*, NO. 01-22-00647-CV, 2023 WL 8938408, at *9 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.) (mem. op.) (concluding an animal enforcement officer was not reacting to an emergency situation when she was responding to a nondescript dog bite call and collided with a vehicle); *see also City of San Antonio v. Hartman*, 201 S.W.3d 667, 672–73 (Tex. 2006) (conclusively finding an emergency situation existed where the city had issued a declaration of disaster due to unprecedented flooding). Moreover, one Texas court has explained that the plain and ordinary meaning of the term "emergency" means "unforeseen circumstances that call for immediate reaction," and it believed that was "the meaning intended by the Legislature." *Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) (citing Webster's Third New International Dictionary, 741 (2002)); *see also Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) ("When a term is left undefined in a statute, 'we will use the plain and ordinary meaning of the term and interpret it within the context of the statute.'" (citation omitted)).

---

[7] For purposes of evaluating this argument, we assume that Officer Cabrera took these mitigative measures.

The TTCA similarly does not define the term "reacting." *See* TEX. CIV. PRAC. & REM. CODE § 101.001. However, Merriam-Webster's Dictionary defines "react" as: "to exert a reciprocal or counteracting force or influence"; "to change in response to a stimulus"; "to act in opposition to a force or influence"; "to move or tend in a reverse direction"; and "to undergo chemical reaction."[8] *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (explaining that the court may look to dictionary definitions, among other sources, to ascertain the ordinary meaning of statutory terms). At least the first three definitions could be a plausible way to construe the statute.

Applying these definitions, it appears at first glance that an officer is "reacting to an emergency situation" when he brakes or otherwise employs mitigation techniques to avoid an impending car wreck. However, there are at least two problems with this reading.

First, if an officer is "reacting to an emergency situation" every time he attempts to avoid or mitigate a car wreck, the emergency exception largely swallows the TTCA motor vehicle waiver. It would be the rare situation where the motor vehicle waiver would apply. As we are to read the terms of the TTCA in context, and it is a fundamental canon of statutory interpretation to avoid reading a statute in a way that would render provisions meaningless, such a reading is untenable. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016).

Second, this reading is contrary to Texas' caselaw. Every case we have come across in the car wreck context interprets the "emergency situation" to be an exigent circumstance separate from the collision. *See, e.g., City of*

---

[8] *React*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/reacting (last visited Mar. 20, 2025).

*Arlington v. Maspero*, 640 S.W.3d 523, 525–27, 529 (Tex. 2022) (finding an officer was reacting to an emergency situation when the officer was pursuing a fleeing suspect prior to a vehicle collision); *City of Austin v. Powell*, 704 S.W.3d 437, 449 (Tex. 2024) (same). The City therefore asks us to significantly expand the reach of the emergency exception beyond that recognized by Texas courts. We perceive no basis for doing so.

**B.    Officer Cabrera was not "responding" to an emergency or 9-1-1 call at the time of the collision.**

The parties most adamantly dispute whether Officer Cabrera was "responding" to an emergency 9-1-1 call[9] because he was still "assigned" to the DWI call and under time pressure to complete that report and file charges, even though the DWI suspect was safely booked into custody. This more difficult question has not been definitively answered by the Texas courts, requiring us to make an "*Erie* guess" as to how the Texas Supreme Court would decide this issue. *See SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) ("In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." (quotation marks and citation omitted)).

The TTCA does not define the term "responding." *See* Tex. Civ. Prac. & Rem. Code § 101.001. While Texas courts have suggested that an officer may still be "responding" to an emergency 9-1-1 call even if he is not "acting under the pressure of an emergency response," Texas courts have not articulated exactly what it means for an officer to be "responding"

---

[9] The parties do not dispute that the DWI call qualifies as an "emergency call," nor do they seemingly dispute that this call originated from the 9-1-1 system.

to an emergency 9-1-1 call. *City of Houston v. Denby*, No. 01-21-00422-CV, 2022 WL 3588753, at *5 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.) (concluding that EMTs were still "responding" to a 9-1-1 call when wheeling a stretcher down a patient's driveway in an effort to transport her to the hospital, even though the patient was in stable condition); *see also Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239–40 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (mem. op.) (finding an officer was responding to an emergency call while driving to the location given by the dispatcher, even though the officer questioned if it was actually an emergency).

However, Merriam-Webster's defines "responding": "as in reacting[;] to act or behave in response (as to a stimulus or influence)."[10] This definition indicates that the response must have a direct connection to the preceding event (i.e., the emergency 9-1-1 call), and it contemplates some degree of proximity in time between the response and the call.

Applying this definition, we conclude that Officer Cabrera was no longer responding to the emergency 9-1-1 call at the time of the collision. When Officer Cabrera was assisting in arresting the suspect, he was responding to the emergency DWI call. He was still acting in response to the underlying reason for being there. However, by the time he left the booking center to finish his report and file charges, his response to the emergency call had ended. At that point, there was a clear break in time, and a series of intervening events (the arrest, the booking, etc.), where Officer Cabrera was allowed to leave the suspect. Thus, when Officer Cabrera began driving back

---

[10] *Responding*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/thesaurus/responding (last visited Mar. 20, 2025).

to his station to complete the report and file charges, he was "returning" from the emergency call, not "responding" to it.

To be sure, Officer Cabrera has testified that he was still "assigned" to the DWI call at the time he collided with Payne. According to the City, this meant that Officer Cabrera could not take other calls or self-initiate other police work during this time. And his work related to that call was not finished. He had to complete a report and file charges, and due to the City's policy, he was under a deadline to do so.

But the contours of the governmental immunity doctrine are defined by the State of Texas, not by city policy. *See generally Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022). While the City of Houston likely has sound reasons for continuing to "assign" officers to emergency calls until after they file charges and for requiring charges to be filed within two hours of booking, those policies do not implicate governmental immunity. Otherwise, the governmental immunity doctrine would shift every time a city changed its policies, and there would be no consistency among Texas municipalities. It would also lead to impractical results. For example, what if a city employee forgets to terminate an officer's assignment to a call until the next day? If the officer is still "responding" to the call merely because he is still "assigned" to the call, then it follows that the City would receive immunity for the officer's fender bender in the drive-thru the next morning. That cannot be correct. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998) (explaining that the purpose of the emergency exception is "to balance the safety of the public with the need for prompt responses to police, fire, and medical emergencies").

Our conclusion is consistent with how Texas courts have construed the emergency and 9-1-1 exceptions. For instance, in *City of Austin v. Choudhary*, the City of Austin Fire Department received 9-1-1 reports that

the resident of a local trailer park was starting small fires. No. 03-05-00549-CV, 2006 WL 1649312, at *1 (Tex. App.—Austin June 16, 2006, no pet.) (mem. op.). The firemen responded to the calls and extinguished the fires. *Id.* An arson investigator then arrived to process the scene. *Id.* After the investigator finished his investigation, he left the scene, and after driving a short distance, he inadvertently ran over a child. *Id.*

The court of appeals held that the investigator's conduct did not fall within the emergency exception because he was not "*responding* to an emergency call at the time of the accident." *Id.* at *4. The court reasoned that, at the time of accident, the investigator was "operating his vehicle while on non-emergency business." *Id.* Specifically, the court explained that the investigator was not part of the initial response to put out the fire, nor was that his responsibility as an investigator. *Id.* And by the time of the accident, the investigator "was simply leaving the trailer park." *Id.*

Unlike the arson investigator in *Choudhary*, Officer Cabrera was part of the initial emergency response. But like the arson investigator, Officer Cabrera had finished any investigatory work and had left the scene of any emergency. Under the ordinary meaning of the term, Officer Cabrera's "response" to the DWI call had ended.

The City contends that *Choudhary* was superseded by the Texas Supreme Court's decision in *City of San Antonio v. Hartman*, which clarified that the TTCA exceptions are broadly construed. We disagree.

*Hartman* was a unique case that novelly applied the emergency exception beyond traffic accidents. 201 S.W.3d at 673. There, the City of San Antonio experienced historic flooding, leading it to issue a declaration of disaster. *Id.* at 669, 672. City officials then placed barricades on various roads throughout the city. *Id.* at 669. The Hartmans drove down one of the roadways, seemingly unimpeded by a barricade, and were swept away by the

flood. *Id.* The Texas Supreme Court held that the emergency exception applied, clarifying that an emergency situation existed as a matter of law and explaining that the City of San Antonio reacted to it by determining where to place barricades. *Id.* at 673. In explaining that the emergency exception extends beyond traffic accidents, the court stated: "The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent." *Id.*

While *Hartman* was decided after *Choudhary*, it did not purport to overrule it. And while in *Hartman*, the Texas Supreme Court broadly construed a TTCA exception, broad does not mean limitless. Rather, *Hartman* applied the emergency exception to a unique set of facts that are wholly inapposite to the facts in *Choudhary* and to the case at bar. Accordingly, *Hartman* does not control this case. And therefore, applying the plain meaning of the term "responding," consistent with the decisions of the Texas courts, we conclude that Officer Cabrera was not "responding" to an emergency or 9-1-1 call at the time he collided with Payne.

### C. Even if Officer Cabrera was "reacting" to an emergency situation or "responding" to an emergency or 9-1-1 call at the time of the collision, his actions violated applicable law and caused the collision.

Chapter 546 of the Texas Transportation Code largely governs emergency responses. *See Powell*, 704 S.W.3d at 453; TEX. TRANSP. CODE § 545.365. Under Chapter 546, when an emergency vehicle is responding to a call, the driver may "exceed a maximum speed limit . . . as long as [he] does not endanger life or property[.]" TEX. TRANSP. CODE § 546.001; *see also id.* § 546.002. The driver of an emergency vehicle responding to an emergency call is still not relieved from: "(1) the duty to operate the vehicle

with appropriate regard for the safety of all persons; or (2) the consequences of reckless disregard for the safety of others." *Id.* § 546.005. The Texas Supreme Court has explained this provision "imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct." *Martin*, 971 S.W.2d at 431 (interpreting a substantially similar predecessor statutory provision); *see also Maspero*, 640 S.W.3d at 529 (interpreting § 546.005 in the same way). Accordingly, when a driver is engaged in an emergency response pursuant to Chapter 546, the inquiry "largely collapses" into the question of whether the driver was reckless. *City of Houston v. Green*, 672 S.W.3d 27, 30 (Tex. 2023).

The Texas Transportation Code defines reckless driving as "driv[ing] a vehicle in wilful or wanton disregard for the safety of persons or property." TEX. TRANSP. CODE § 545.401(a). Texas courts have interpreted this to mean that the driver must act with "'conscious inference,' or 'subjective awareness of an extreme risk.'" *Maspero*, 640 S.W.3d at 531 (citation omitted). It requires "more than a 'momentary judgment lapse' and instead requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury.'" *Id.* (citation omitted). For example, in *Maspero*, the Texas Supreme Court concluded that an officer did not act with reckless disregard when, engaged in a high-speed chase of a drug-trafficking suspect: the officer had slowed down by the time she collided with the plaintiffs, had activated her lights but not sirens, and had "engaged in some degree of risk assessment" during the pursuit. *Id.* at 532; *see id.* at 531; *see also Green*, 640 S.W.3d at 31 (finding that an officer did not drive with reckless disregard in responding to a call involving an armed suspect when he slowed his speed prior to passing through the intersection and intermittently used his siren, though not at the time he proceeded through the intersection where he and the plaintiff collided).

Under the facts alleged, Officer Cabrera was driving at a reckless speed. While the Texas Supreme Court has not provided a specific speed that constitutes recklessness, driving 70 MPH in a 35 MPH zone solely for the reason of returning to the office to complete a report and file charges is irresponsibly fast. This is particularly so considering that Officer Cabrera was driving without lights or sirens and had taken his eyes off the road to look down at his laptop.

This is not to say that an officer can never deploy high speed when responding to an emergency. *See Maspero*, 640 S.W.3d at 527, 531 (explaining the officer reached a speed close to 100 MPH when pursuing a suspect, although the officer's speed had slowed considerably by the time of the collision). But the requirement to complete a report and file charges in a timely manner is not an adequate justification. At least based on the allegations in the complaint, Officer Cabrera's conduct was reckless.

Lastly, having determined that Officer Cabrera drove at a reckless speed, we find that Appellees adequately alleged "a causal nexus between [their] claim and [Officer Cabrera's] reckless or illegal action." *Maspero*, 640 S.W.3d at 531 (emergency exception); *see also* TEX. CIV. PRAC. & REM. CODE § 101.021(1) (requiring proximate cause). In the complaint, Appellees explicitly allege that the accident would not have occurred absent Officer Cabrera's excessive speed. Thus, at this stage in the case, it is proper to assume the requisite causal connection.

## CONCLUSION

We find that (1) Officer Cabrera was not "reacting" to an emergency situation, or "responding" to an emergency call or 9-1-1 call when he collided with Payne; and (2) even if Officer Cabrera was, his alleged actions were reckless in violation of the relevant statutes and caused the collision. Accordingly, Officer Cabrera's actions do not satisfy the emergency or 9-1-1

exceptions, and the City is not entitled to governmental immunity. We
AFFIRM.