UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIET PAYNE, CHARLES PAYNE, JR. | § | |
| CAVIN PAYNE, STEPHANIE PAYNE, | § | |
| BETTY MORRISON, KIZZ GOINS, | § | |
| KATANIA DEARBORNE, and ROBERT | § | |
| PAYNE, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Civil Action No.: 4:23-cv-04686 |
| | § | |
| CITY OF HOUSTON, TEXAS and | § | |
| CHRISTOPHER CABRERA | § | |
| Defendants | § | |

## DEFENDANT CITY OF HOUSTON'S RULE 56
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of Houston ("Houston") file this Motion for Summary Judgment pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

### Summary of the Argument

1. A car accident causing unintended loss of life simply does not allege a constitutional violation. Even if it could, no HPD policy promulgated with deliberate indifference was the moving force for this accident; instead, Charles Payne caused this accident by making an illegal left turn into oncoming traffic. Payne's conduct not only negates Plaintiffs' *Monell* claims, but also their TTCA claim. Additionally, Plaintiffs' suit is barred by the TTCA's election of remedies scheme, and the 9-1-1 exception.

### Table of Contents

Summary of the Argument ............................................................................................... 1

1

# Table of Contents

Table of Contents ................................................................................................................1

Table of Authorities ..........................................................................................................3

Nature and Stage of Proceedings ......................................................................................4

Statement of Issues to Be Ruled on and Standard of Review ...........................................4

   I.   Statement of Issues ...................................................................................................4

   II.   Standard of Review ..................................................................................................5

Facts ..................................................................................................................................5

Argument and Authorities .................................................................................................7

   I.   No official city policy or custom was the moving force behind a deprivation of constitutional rights..................................................................................................7

      A.   There is no underlying constitutional violation....................................................7

      B.   Plaintiffs cannot establish moving force ..............................................................8

      C.   Plaintiffs have no evidence of a policy or custom of reckless driving by speeding by more than 20 MPH over the speed limit when not responding to an emergency.............9

         1.   HPD policy requires officers to drive with appropriate regard to safety of all persons. ....................................................................................................................................9

         2.   HPD's Circular re: 2-hours to file charges.......................................................10

         3.   Patrol officers cannot pull each other over or "cite" each other for speeding because the Transportation Code exempts patrol officers from speed limits. .........................10

         4.   Plaintiffs can adduce no evidence of similar instances and therefore no "pattern" nor "deliberate indifference".......................................................................................11

      D.   Plaintiffs have no evidence of a failure to train, supervise, and discipline..............13

         1.   Plaintiffs cannot prove their training theory....................................................13

         2.   Plaintiffs cannot prove their supervision theory...............................................14

         3.   Plaintiffs cannot prove their discipline theory. ................................................14

   II.   Houston is entitled to summary judgment on Plaintiffs' TTCA claim because Cabrera breached no duty that proximately caused the collision. .................................................15

      A.   Cabrera breached no duty and Plaintiffs have no evidence otherwise....................16

      B.   Charles Payne was the only proximate cause of the collision. .............................17

   III.   Plaintiffs' TTCA claim against Houston is barred by the TTCA's election of remedies scheme...............................................................................................................................18

IV.  Plaintiffs cannot negate the 9-1-1 exception, which preserves Houston's immunity....

..............................................................................................................19

Conclusion..................................................................................................20

**Table of Authorities**

**Cases**

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017)...................................5

*Benavides v. County of Wilson*, 955 F.2d 968 (5th Cir.1992).........................14

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) .............................11

*Celotex Corp. v. Catreet*, 477 U.S. 317 (1986) .................................................5

*Chavez v. Alvarado*, 550 F. Supp. 3d 439 (S.D. Tex. 2021)....................... 10, 13

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ..........................................8

*City of San Antonio v. Riojas*, 640 S.W.3d. 534 (Tex. 2022)..........................16

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)..........................................7

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) .............................................7

*Daniels v. City of Dallas* ...................................................................................7

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017)............................11

*Ferguson v. Tex.* ................................................................................................8

*Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839 (5th Cir. 2018) ...............5

*Jones v. Larmartiniere* ......................................................................................8

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009)................12

*PHI, Inc. v. Tex. Juvenile Justice Dep't*, 593 S.W.3d 296 (Tex. 2019) .............16

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002).................................12

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)............................7

*Ryder Integrated Logistics, Inc. v. Fayette County*, 453, S.W.3d 922 (Tex. 2015)...............16

*Sanders-Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010) ........................14

*Smith v. City of Dallas* ......................................................................................8

*Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826 (W.D. Tex. 2006) .............13

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)..........16

*United States v. Lanier*, 520 U.S. 259 (1997)..................................................11

*United States v. Walker*, 514 F. Supp. 294 (E.D. La. 1981) .............................11

*Vann v. City of Southaven*, 884 F.3d 307 (5th Cir. 2018)...................................5

*Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987 (5th Cir. 2019) .................5

*Webb v. Town of Saint Joseph*, 925 F.3d 209 (5th Cir. 2019)............................7

*Werner Enterprises, Inc. v. Blake*............................................................. 17, 18

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010) ................13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 101.021......................................................16

Tex. Civ. Prac. & Rem. Code § 101.062.........................................................................19
Tex. Transp. Code § 545.132 .....................................................................................9
Tex. Transp. Code § 545.365 ............................................................................ 10, 20

**Rules**
Fed. R. Civ. P. 12(b)(6) ...................................................................................1

### Nature and Stage of Proceedings

2. This is a car wreck case that came within a month of trial in Texas state court. On December 15, 2023, Houston filed its Hybrid Traditional and No Evidence Motion for Final Summary Judgment on Government Immunity. That same day, Plaintiffs non-suited in state court and re-filed here against both Houston and Officer Cabrera [Doc. #1]. On March 19, 2024 the Court dismissed Plaintiffs' claims against Cabrera [Doc. #20]. The only remaining claims are Plaintiffs' TTCA claim and *Monell* theories for: a) a policy and practices of reckless driving; b) two-hour charge policy which requires officers to drive recklessly; c) not disciplining or overseeing the driving of any HPD officer; d) a policy permitting and encouraging officers to operate with complete disregard to traffic laws.

### Statement of Issues to Be Ruled on and Standard of Review

**I. Statement of Issues**

1. No official city policy or custom was the moving force behind a deprivation of constitutional rights.

2. Houston is entitled to summary judgment on Plaintiffs' TTCA claim because Cabrera breached no duty that proximately caused the collision.

3. Plaintiffs' TTCA claim is barred under the TTCA's election of remedies scheme.

4. Houston is entitled to summary judgment on Plaintiffs' TTCA claim because the 9-1-1 and emergency exceptions preserve Houston's immunity.

## II.    Standard of Review

3.   Summary judgment is proper under Rule 56, Federal Rules of Civil Procedure, if the movant establishes that there is no genuine issue of material fact and the law entitles the movant to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catreet*, 477 U.S. 317, 322 (1986); *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018). While the movant must demonstrate the absence of a genuine issue of material fact, the movant does not need to negate the elements of the non-movant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (citation omitted). Rule 56(c) also mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

4.   To avoid summary judgment, the non-movant must identify specific evidence in the record and articulate how that evidence supports the specific claim. *See Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018) (citation omitted). Factual controversies are to be resolved in favor of the non-movant, but only when both parties have submitted evidence of contradictory facts. *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 992 (5th Cir. 2019).

## Facts

5.   Cabrera is an HPD patrol officer. Ex. A at ¶2. He drove northbound on North Shepherd in a manner that he believed was reasonable and prudent. Ex. A at ¶5. He was obeying traffic signals and came to a complete stop at several red lights on North Shepherd. Ex. A at ¶5. He was

not accelerating aggressively. Ex. C 26:19-27:4; Ex. D 64:24-65:5. But he reached a peak speed of 70 mph for a few seconds. Ex. C 21:6-11.

6.    Suddenly, a Cadillac sedan pulled out in front of him. Ex. A at ¶5. At that point on North Shepherd, there is not a stop sign, stop light, or yield sign that controlled Officer Cabrera's northbound lanes of travel. Ex. A at ¶5.



Payne was making a left turn, Ex. A at ¶5, and had the duty to yield to traffic heading northbound on Shepherd; he did not do so. Ex. D. at 21:23-22:18.

7.    Payne was impaired and in the throes of a medical emergency. Payne was having a heart attack as evidenced by the EMS EKG on-scene and further evidenced by the extremely narrowed left anterior descending coronary artery (aka the "widowmaker") noted in the medical examiner's autopsy. Ex. B at ¶3. In addition, Payne's blood sugar (glucose) was extremely elevated. Ex. B at ¶5. Though the normal range is 70-100 mg/dL, Payne's blood glucose at the time of the accident was over 500 mg/dL. Ex. B at ¶5. Blood glucose levels this high would have almost certainly affected his vision, could have affected his judgment, and was a significant metabolic stressor that likely contributed to the acute heart attack he was having at the time of the subject auto accident. Ex. B at ¶5. Indeed, uncontrolled blood sugar from diabetes can cause

a person to fail a field sobriety test, causing them to appear intoxicated. Ex. D at 28:7-15. He was also under the influence of marijuana, which can impair a person's ability to operate a motor vehicle, including judgement, ability to gauge speed and distance, and likelihood of distraction. Ex. D at 25:8-27:9. Separately or combined with the impairing effects of THC, Payne's time perception, judgment, and coordination were impaired enough to turn left without looking or yielding to oncoming traffic. Ex. B. at ¶5.

**Argument and Authorities**

**I.    No official city policy or custom was the moving force behind a deprivation of constitutional rights.**

8.      For the City to be liable under § 1983, a plaintiff must show "that an official policy or custom was a cause in fact of the deprivation of rights inflicted[,]" that the custom or policy served as the moving force behind the violation. *Spiller v. City of Tex. Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

**A.  There is no underlying constitutional violation.**

9.      A car accident causing unintended loss of or injury to life or property does not constitute a deprivation of a right secured by the Constitution and laws of the United States. *See e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998); *Daniels v. City of Dallas*, 272 Fed. Appx. 321, 324 (5th Cir. 2008) (per curiam) (not designated for publication); *Coon v. Ledbetter*, 780 F.2d 1158, 1163 (5th Cir. 1986); *Bell v. Hicks*, No. CIV.A. H-12-1979, 2012 WL 3276728, at *2 (S.D. Tex. Aug. 9, 2012); *Ferguson v. Tex.*, No. 3:03-CV-407-G, 2003 WL 22329036, at *2 (N.D. Tex. Oct. 6, 2003); *Jones v. Larmartiniere*, No. CIV.A. 09-359-JVP-DL, 2009 WL

2136176, at *1 (M.D. La. July 14, 2009).

10. Cabrera did not intentionally direct his vehicle into Payne's Ex. D at 11:17 to 11:19. Nor was Cabrera reckless for reaching 70 mph. Ex. I at 34:7-22; 36:10-37:2; 38:21-39:18; 40:15-23; 45:13-16; Ex. K, Cabrera Dep. at 52:19-23. Only the most egregious official conduct can be said to be arbitrary in the constitutional sense. *Estate of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244–45 (5th Cir. 2025). Conduct shocks the conscience only when it is so brutal and offensive that it did not comport with traditional ideas of fair play and decency. *Id.* Cabrera's conduct does not meet the deliberately high bar. *See id.* Absent underlying constitutional violation, there can be no municipal liability. *Smith v. City of Dallas*, 3:07-CV-1413-O (BH), 2008 WL 11350015, at *11 (N.D. Tex. Nov. 18, 2008) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

**B. Plaintiffs cannot establish moving force**

11. Plaintiffs' injuries stem from an accident caused by Payne himself:

- Payne was operating a motor vehicle under the influence of marijuana which can impair judgment and ability to safely operate a motor vehicle; Ex. B at ¶5; Ex. D at 25:8-19:9; 27:24-28:18

- Payne's blood sugar was high, which can mimic drunk driving; Ex. D 27:24-28:18

- Payne failed to yield the right of way to northbound traffic; Ex. D at 21:23-22:18; Tex. Transp. Code § 545.132

- Payne entered the intersection illegally; Ex. D at 56:7-15

- Payne did not come to a complete stop before beginning his turn; Ex. C at 14:14-16:18

- Had Payne stopped for just two seconds before beginning his turn, the accident would not have occurred. Ex. C at 14:14-16:18

- There was no indication that Officer Cabrera's inattention caused the accident. Ex. C at 33:9-21

12. The reason Payne made this illegal turn is because shortly before or at the time of the collision, Charles Payne was having a heart attack. Ex. B at ¶3. In addition, his blood glucose was extremely elevated, which, separately or combined with the fact that he was under the influence of marijuana made him impaired enough to turn left without looking or yielding to oncoming traffic. Ex. B at ¶5. He made a left turn immediately in front of Cabrera without stopping and in fact, barely even slowing down. Ex. C at 14:14-16:8. Although Plaintiffs take issue with Officer Cabrera's speed, Officer Cabrera's speed alone has no causal nexus to this accident. Plaintiffs' accident reconstructionist cannot say to a reasonable degree of certainty that the accident would still have occurred if Officer Cabrera remained at 70 mph, but stayed in the left lane. Ex. C at 37:23-38:1.

**C. Plaintiffs have no evidence of a policy or custom of reckless driving by speeding by more than 20 MPH over the speed limit when not responding to an emergency**

**1. HPD policy requires officers to drive with appropriate regard to safety of all persons.**

13. Houston's official policies require officers to drive with appropriate regard for the safety of all persons in both emergency and non-emergency circumstances. Ex. G, G.O.600-01; Ex. L G.O. 400-07; Ex. M., Darcy Dep. at 9:10-16; 10:15:18. Indeed, in the state court proceeding,

Plaintiffs' purported police practices expert opined that HPD policy required officers to drive safely and responsibly and that Cabrera violated HPD policy. Ex. M. at 9:10-16; 10:15-18. No HPD policy can be the moving force.

### 2. HPD's Circular re: 2-hours to file charges

14. Plaintiffs alleged that this Circular "requires officers to drive recklessly" [Doc. #1 at ¶59]. The Circular says no such thing [Doc. #1 at ¶37]. A nonexistent policy cannot cause an injury. *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 457 (S.D. Tex. 2021).

15. In any event, the policy emanates not from HPD, but pursuant to Joint Processing Center agreement between Harris County Sheriff's Office and the City of Houston. Ex. E at ¶4.6. In fact, Harris County has afforded HPD *more time* than other agencies, who are required to file charges *before* JPC will take custody of the prisoner. Ex. F. at COH_Payne 001901 ¶II.F.1. Put differently, even if the 2-hour charge policy were the moving force for this incident, it is not an HPD policy and it gives officers more time.

### 3. Patrol officers cannot pull each other over or "cite" each other for speeding because the Transportation Code exempts patrol officers from speed limits.

16. Plaintiffs predicate their Complaint upon the idea that HPD officers are not pulled over or cited for driving over posted speed limits [Doc. #1 at ¶¶8, 35]. But this is because the Texas Legislature has expressly exempted law enforcement officers from speed limits during both emergency response and routine patrol. *See* Tex. Transp. Code § 545.365.

17. Prosecutions for moving violations are criminal in nature. Officers cannot be pulled over or "cited" for conduct that is not criminalized. *See e.g.*, Tex. Transp. Code § 543.004

(authorizing arrest without warrant when officer observes violation of law); *See e.g., United States v. Lanier*, 520 U.S. 259, 265 (1997); *United States v. Walker*, 514 F. Supp. 294, 318–19 (E.D. La. 1981). Nor can Houston be liable for obeying state law. *See e.g., Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990); *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988)); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985) (noting that forcing the city to pay for the "enforcement of an unconstitutional state statute" would "subvert the message of *Monell v. Department of Social Serns.*, 436 U.S. 658 (1978), that municipalities cannot be vicariously liable under § 1983").

   **4. Plaintiffs can adduce no evidence of similar instances and therefore no "pattern" nor "deliberate indifference".**

18.  In the absence of an actual policy, Plaintiffs must present evidence that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields*, 860 F.3d at 808–09. Meeting this heavy burden requires a significant number of other instances, placed in context of the size of the police department and criminal incidents investigated. *See e.g., Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (three arrests over three and a half years insufficient); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (holding two reports of violations of a policy in four years in Houston insufficient); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851–52 (5th Cir. 2009) (27 complaints of excessive force over three years in department with more than 1,500 insufficient); *Pineda v. City of Houston*, 291 F.3d 325, 329

(5th Cir. 2002) (holding eleven incidents in one of the Nation's largest cities and police forces insufficient). Plaintiffs must also allege with specificity that the other instances are fairly similar to what ultimately transpired. *Hicks-Fields*, 860 F.3d at 810.

19. No such pattern exists here. Plaintiffs can adduce no evidence that any other officer traveled double the posted speed limit while "simply assigned to a call" or "the detainee has already been arrested and booked into the jail, and that he was simply returning to the station to fill out a report" as Plaintiffs described this incident [Doc. #1 at ¶39]. The identifiable examples Plaintiffs cited in their complaint [Doc. #1 at ¶¶42-48] pertain to officers who were either involved in a pursuit[1] or were completing their initial response to the scene of an emergency, some of whom had emergency equipment activated. Exs. N-P. And in the Caleb Swofford incident [Doc. #1 at ¶49] the Officer was found not-at-fault because the pedestrian left safety and crossed the roadway outside of a crosswalk while intoxicated on methamphetamine. Ex. Q. In other words, a handful of dissimilar car accidents is insufficient to establish a "custom" of reckless driving.

20. This is particularly true when placed in the context of the size of the department. HPD has more than 5,100 commissioned officers and 900 civilian support staff.[2] During the 2-year time period of 12/26/2019 to 12/26/2021, there were a total of 1,493 total crashes involving HPD

---

[1] Plaintiffs also asserted that the officer in *Salazar v. City of Houston*, was traveling 70 mph in a 35-mph zone and "did not reduce his speed before going into an intersection." [Doc. #1 at ¶48]. But the unrefuted evidence adduced in *Salazar* established that Officer Seidel reduced his speed down to around 30 mph from 60-70 mph while making his turn. *City of Houston v. Salazar*, 682 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2024, no pet.).

[2] *See* Command Overview September 2025 *available at:* https://www.houstontx.gov/police/department_reports/command_overview/CommandOverview.pdf

officers. Ex. J. at ¶9; Ex. Z. Officers were found not-at-fault in 827 (55%) of them. Ex. J. at ¶9;

Ex. Z. Out of 483 crashes that occurred in the 7 months preceding this incident, in ***only three—***

***less than one percent***—was the HPD officer found at fault with unsafe speed as a contributor.

Ex. Z.[3]  Two of those three involved officers who were driving ***below the speed limit***. Exs. Z, R

(30mph/35mph zone), S (50-55mph/60mph zone).

21.   Absent any actual pattern, there can be no moving force. *Chavez*, 550 F. Supp. 3d at 457.

Nor can there be deliberate indifference. *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir.

2003).

**D.  Plaintiffs have no evidence of a failure to train, supervise, and discipline.**

22.   All failure to act claims, such as failure to train, supervise and discipline, involve the same

basic elements:   inadequacy, deliberate indifference, and causation. *Snow v. City of El Paso,*

*Tex.*, 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006).

**1.  Plaintiffs cannot prove their training theory.**

23.  Compliance with state requirements is a factor counseling against a failure to train

finding. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). When officers

have received training required by Texas law, the plaintiff must show that the legal minimum of

training was inadequate. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010)

(citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992). Officer Cabrera met

minimum TCOLE training requirements, and his training included two 4-hour driving courses

---

[3] By way of comparison, more than 40 of the at-fault crashes were very low-speed collisions coded as "3=backed
without safety". Ex. Z.

on 7/29/2021, and 3/18/21, and a 1-hour driving course on 12/26/20. Ex. H. Plaintiffs cannot prove state requirements are inadequate. Plaintiffs can adduce no evidence to support the elements of deliberate indifference or causation.

24. In addition, most officers who are in an at-fault accident are ordered to complete extra training in the form of the At-Fault Crash Remediation course or the pursuit driving course. *See* Exs. N-P, R-S, U, W, Z. Officer Cabrera was required to complete a DDC course after this accident. Ex. K at 126:2-11; Ex. T (curriculum).

**2. Plaintiffs cannot prove their supervision theory.**

25. HPD has satellite-based Automated Vehicle Location ("AVL") system that can be used in tandem with the computer aided dispatch ("CAD") system to map the locations of patrol units and is primarily used by dispatchers and desk sergeants to determine who is on what call, rather than viewing the mapping function. Ex. X. Ex. I at 77:18-25. Most patrol supervisors do not have access to these maps. Ex. I at 77:3-17. Nor would they have time to monitor them because they supervise 4-10 officers while on patrol themselves. Ex. J. at ¶13.

26. Sergeants have on occasion used the mapping function in real-time to ensure that officers were not driving too fast in response to calls. Ex. I at 82:22-84:14. The department explored replicating this on a wider scale to monitor driving speeds departmentwide, but it proved resource-prohibitive and ultimately unfruitful in catching officers driving at unsafe speed. Ex. J. at ¶14. Ex. I at 81:24-82:15. As such, plaintiffs cannot prove deliberate indifference or causation.

**3. Plaintiffs cannot prove their discipline theory.**

27. Plaintiffs allege that "The City can monitor" its officers' speed, but no one did so with

Officer Cabrera or used that data for disciplinary purposes [Doc. #1 at ¶¶36, 62]. But the evidence shows the opposite. Exs. I. Duplechain Dep. at 83:3 to 84:8; J. at ¶14; K at 125:10-19, P, U.

28. Plaintiffs allege that Houston Police Officers are *never* punished, disciplined, or cited for driving over the speed limit [Doc. #1 at ¶35]. As discussed *supra*, patrol officers such as Cabrera cannot be "cited" for driving over the posted speed limit because—as a matter of Texas law—patrol officers are exempt from speed limits. Tex. Transp. Code § 545.365. But Officers are disciplined. After an initial investigation by VCD which is reported to Texas Department of Transportation, a crash packet is prepared and submitted to a Crash Review Board that makes recommendations regarding disciplinary action. Ex. W. Every officer in an at-fault crash was subject to disciplinary procedures, including Officer Cabrera. Exs. K at 125:10-126:11, U, W, Z. Indeed, each of the officers involved in the identifiable incidents in Plaintiffs' complaint were disciplined, even one who was not involved in any collision. Exs. N-P, Z. Plaintiffs can adduce no evidence of deliberate indifference or causation.

II. **Houston is entitled to summary judgment on Plaintiffs' TTCA claim because Cabrera breached no duty that proximately caused the collision.**

29. Governmental immunity deprives a trial court of subject-matter jurisdiction for suits against governmental units unless the government consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The TTCA only waives governmental immunity in limited circumstances. Tex. Civ. Prac. & Rem. Code § 101.021(1). Courts must strictly construe these provisions in favor of retention of immunity. *PHI, Inc. v. Tex. Juvenile*

*Justice Dep't*, 593 S.W.3d 296, 303 (Tex. 2019); *Ryder Integrated Logistics, Inc. v. Fayette County*, 453, S.W.3d 922, 927 (Tex. 2015).

30.   The text of Section 101.021(1) requires a plaintiff to show ***both*** that the property damage, personal injury, or death arose from motor-vehicle use ***and*** that the damage, injury, or death was proximately caused by the employee's negligence. *City of San Antonio v. Riojas*, 640 S.W.3d. 534, 538 n.13 (Tex. 2022) (emphasis added). These are separate and independent requirements. *Id.* Satisfying the "arises from" requirement does not excuse a plaintiff from demonstrating proximate cause. *Id.*

**A.  Cabrera breached no duty and Plaintiffs have no evidence otherwise.**

31.   Payne pled that Cabrera breached his duty in one or more of the following ways, which are contrasted against the unrefuted evidence developed in the case:

| Complaint at ¶85 | Unrefuted Evidence |
| --- | --- |
| failing to keep a proper lookout | Irwin conceded that there is not an indication that driver inattention caused the crash. Ex. C at 33:9-21 |
| failing to control speed in violation of Transportation Code § 545.351 | Darcy conceded that this section is inapplicable to Cabrera because Payne did not enter the intersection legally. Ex. D at 56:7-15 |
| failing to brake properly | Cabrera braked hard and turned the wheel to the left. Ex. A at ¶6.<br>Iwrin and Darcy both conceded that Cabrera braked and swerved in response to Payne pulling out in front of him. Ex. C. at 33:22-25; Ex. D at 57:3-8; 57:17-58:2. |
| failing to take evasive action to avoid hitting Plaintiff | Cabrera braked hard and turned the wheel to the left. Ex. A at ¶6.<br>Iwrin and Darcy both conceded that Cabrera braked and swerved in response to Payne pulling out in front of him. Ex. C. at 33:22-25; Ex. D at 57:3-8; 57:17-58:2. |
| failing to control his vehicle | Cabrera tried to minimize the harm to persons by aiming for the trunk of the Cadillac or at least the back seat where no persons appeared to be sitting. Ex. A at ¶6.<br>Irwin agreed that the steering input looked like Cabrera realized when he was |

| | not going to avoid the collision he tried to go behind the Cadillac. Ex. C at 34:1-35:2 |
|---|---|
| driving recklessly in violation of Transportation Code § 545.401 | Cabrera believed he was operating his vehicle in a manner that was reasonable and prudent. Ex. A at ¶5. He was obeying traffic signals and came to a complete stop at several red lights. Ex. A at ¶5. He maintained visibility on the street and the road ahead of him. Ex. A at ¶5. He was not accelerating aggressively. Ex. C 26:19-27:4; Ex. D 64:24-65:5. But he reached a peak speed of 70 mph for a few seconds. Ex. C 21:6-11. Cabrera testified he was not reckless. Ex. K at 52:2-23 Duplechain testified that based on the totality of the circumstances, Officer Cabrera was not reckless. Ex. I at 45:13 to 45:16 |
| failing to use the degree of care as a person of ordinary reasonable prudence would have | Cabrera testified he was operating his vehicle in a manner he believed to be reasonable and prudent. Ex. A at ¶5. |

32. The evidence establishes that Cabrera breached no such duties. Plaintiffs have no evidence to the contrary.

**B. Charles Payne was the only proximate cause of the collision.**

33. The Texas Supreme Court recently clarified the standard for proximate cause based on squarely analogous facts. *Werner Enterprises, Inc. v. Blake*, ___ S.W.3d ___, 2024 WL 6043877 (Tex. June 27, 2025). In *Werner*, the driver of a pickup truck traveling too fast on an icy, divided interstate highway suddenly lost control, hurtled across a 42-foot-wide median, and collided with the defendant's 18-wheeler before the defendant had time to react. *Id.* The plaintiffs proved at trial that, if not for the 18-wheeler's speed, which was below the speed limit but still unsafe for the icy conditions, the accident likely would not have occurred or the injuries would have been less severe. *Id.* The Supreme Court held, however:

> The defendant's presence on the highway, combined with his speed, furnished the condition that made the injuries possible, but it did not proximately cause the injuries. Rather, the sole proximate cause of this accident and these injuries—the

sole substantial factor to which the law permits assignment of liability—was the sudden, unexpected hurtling of the victims' vehicle into oncoming highway traffic, for which the defendants bore no responsibility.

*Werner*, 2024 WL 6043877, at *1.

34. The same is true here. *Even if* Cabrera had been traveling too fast for the conditions, and *even if* the accident would not have occurred had Cabrera been traveling more slowly, his presence on the Shepherd at the moment Charles Payne had a heart attack and turned into oncoming traffic was a mere happenstance of place and time. Plaintiffs' purported expert conceded that there is no indication that Officer Cabrera was inattentive or that he failed to react to Charles Payne pulling out in front of him. Ex. C at 33:9-21. And Payne's accident reconstructionist cannot say to a reasonable degree of certainty that the accident would still have occurred if Officer Cabrera remained at 70 mph, but stayed in the left lane. Ex. C at 37:23-38:1. The sole substantial factor to which Texas law permits assignment of liability is Payne's sudden and unexpected left turn into oncoming traffic. As Cabrera's conduct is not the proximate cause under the standard in *Werner*, the TTCA's motor vehicle waiver does not apply and this Court lacks subject-matter jurisdiction over Plaintiffs' TTCA claim.

## III. Plaintiffs' TTCA claim against Houston is barred by the TTCA's election of remedies scheme.

35. Section 101.106(d) of the TTCA's election of remedies scheme states "a judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(d).

36. Here, Payne's obtained a judgment against Officer Cabrera, *see* Ex. Y. Because Plaintiffs' claims are entirely derivative of Payne's, *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) ("Wrongful death actions are also derivative of the decedent's rights."), both suit and recovery against Houston are barred. *See* Tex. Civ. Prac. & Rem. Code § 101.106(d).

**IV.     Plaintiffs cannot negate the 9-1-1 exception, which preserves Houston's immunity.**

37. The 9-1-1 exception provides:

> This chapter applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under the direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

Tex. Civ. Prac. & Rem. Code § 101.062(b).

38. Although the TTCA does not define "9-1-1 emergency call", the statute defines "9-1-1 emergency service" consistent with the Health and Safety Code, which defines "9-1-1 service" as "communications service that connects users to a public safety answering point through a 9-1-1 system." *City of Houston v. Denby*, No. 01-21-00422-CV, 2022 WL 3588753, at *5 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.); Considering the language of the statute, a 9-1-1 call is a call placed to a 9-1-1 service. *Id.* Nothing in this section requires the pressure of an emergency response. *Id.*

39. The court must first assess whether any laws or ordinances apply to the action or to some aspect of it. *City of Killeen-Killeen Police Dep't v. Terry*, 712 S.W.3d 101, 102 (Tex. 2025). But because the 9-1-1 exception has no residual recklessness prong, if there is no

applicable statute or ordinance, or the officer did not violate the applicable statute or ordinance, then the 9-1-1 exception withdraws the immunity waiver and the suit must be dismissed. *Id.* at 102-03.

40.  Here, the evidence establishes that Cabrera was still responding to the priority-two call that originated from the 9-1-1 system. Ex. A at ¶7. And even if there were no pressure of an emergency response, Cabrera remained assigned to that call and was out of the call for service loop as a result. Ex. I at 32:15-33:4.

41.  Nor did Cabrera violate any applicable law. Ex. I at 45:6-11. The Texas Legislature has expressly exempted law enforcement officers from speed limits on routine patrol as well as emergency response. *See* Tex. Transp. Code §§ 545.365; 546.001. Ex. I at 63:6-13. Despite being assigned to the call, Officer Cabrera was a Patrol Officer on a patrol shift. Ex. I at 47:24-48:4, 49:17-22. He did not violate the law by exceeding the speed limit; the speed limit did not apply to him. Ex. I at 45:6-11.

**Conclusion**

Plaintiffs cannot demonstrate any genuine issue of material fact. Therefore, Houston respectfully requests that this Court grant this motion, and enter judgment in Houston's favor.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

Date:  September 26, 2025        By:  */s/ Christy L. Martin*
                                      Chief, Torts/Civil Rights
                                      ATTORNEY IN CHARGE

SBN: 24041336
FBN: 754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was filed via CM/ECF and served via electronic filing manager to all known counsel of record.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN