**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HARRIET PAYNE, CHARLES PAYNE, JR. CAVIN PAYNE, STEPHANIE PAYNE, BETTY MORRISON, KIZZ GOINS, KATANIA DEARBORNE, and ROBERT PAYNE, Plaintiffs** | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **Civil Action No.: 4:23-cv-04686** |
| **CITY OF HOUSTON, TEXAS and CHRISTOPHER CABRERA Defendants** | §<br>§<br>§<br>§ | |

## **DEFENDANT CITY OF HOUSTON'S RULE 59 MOTION FOR NEW TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of Houston ("Houston") files this Motion for New Trial under Rule 59 of the Federal Rules of Civil Procedure as follows:

### Introduction

1.    A new trial should be awarded for the following reasons:

- The court made erroneous evidentiary rulings that affected the jury's verdict
- The court erroneously charged the jury
- Houston was unfairly surprised
- The verdict was against the great weight of the evidence
- The damages awarded were excessive

### Argument and Authorities

2.    Rule 59 permits a court to grant a new trial on all or some of the issues. Fed. R. Civ. P. 59. The court of appeals reviews a ruling on a new-trial motion for abuse of discretion but scrutinizes a grant more closely than a denial. *Yarbrough v.*

*SlashSupport, Inc.*, 152 F.4th 658, 664 (5th Cir. 2025). The court of appeals will draw all reasonable inferences in the light most favorable to the verdict. *Trabucco v. Rivera*, 141 F.4th 720, 727 (5th Cir. 2025)

## I.    The court made erroneous evidentiary rulings that affected the jury's verdict.

3.    The Court of Appeals reviews the exclusion of evidence for abuse of discretion. *Yarbrough v. SlashSupport, Inc*., 152 F.4th 658, 664 (5th Cir. 2025).

### A. The court excluded significant evidence regarding periods of separation or estrangement that was directly relevant to the measure of wrongful death damages.

4.    When awarding wrongful-death damages, a jury is allowed to consider the relationship between the plaintiffs and the decedent, their living arrangements, extended absences from one another, the harmony of their family relations and their common interests and activities.  Tex. P.J.C. 29.3

5.    The court excluded significant, and directly relevant evidence:

- In 2008, Harriet Payne filed for divorce and alleged that she and Charles Payne had not lived as husband and wife since July of 1987. She also alleged that Charles Payne abandoned his family and refused to support their children.
- According to most of the family, Charles Payne was imprisoned in Louisiana between 1990 and 1992.
- According to Charles Payne, Jr., Charles Payne Sr. was imprisoned in a different jail in Louisiana for two years starting in 1980.
- Robert Payne—purported child of Charles Payne outside the marital union— never lived in the same household and spent many years in jail himself. He could not testify at trial because he was incarcerated.
- Cavin (Kevin) Payne—was imprisoned for 24 years and was only able to see his father maybe twice per month. After being released, he was incarcerated for 18 months due to a parole violation; his father did not visit him a single time.

6.      During the jury charge conference, the Court realized that this was a significant problem and told Plaintiffs as much. At the bare minimum, the Court should award a new trial on damages.

**B. The court admitted expert testimony over Defendant's objection that was not disclosed during discovery**

7.      The Court admitted over Houston's objection Plaintiffs' Exhibit 26, which is a month of AVL data pulled from other HPD officers. The exhibit did not reflect the speed limit of the road the officer was traveling on, did not reflect whether they were on a call, and did not reflect whether any injury-producing collision resulted. Furthermore, the discussion regarding this exhibit reflected it was data pulled specifically in response to a discovery request; no testimony or other evidence suggested that the Chief of Police was made aware of this exhibit or its data. In short, the data was irrelevant to *Monell* because it did not reflect ***similar*** instances of which the Chief was aware. *See e.g.*, *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (three arrests over three and a half years inufficient); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (holding two reports of violations of a policy in four years in Houston insufficient); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851–52 (5th Cir. 2009) (27 complaints of excessive force over three years in department with more than 1,500 insufficient); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding eleven incidents in one of the Nation's largest cities and police forces insufficient).

8.      Furthermore, this exhibit was introduced through Plaintiffs' police practices expert, Christopher Darcy. He had really never seen it before, and the Court had to excuse the jury to give Plaintiffs' counsel time to figure out how to get it into evidence when the witness could not even identify what it was. Houston objected because neither Darcy's July 24 report nor his September 23 report relied on Exhibit 26.

9.      What is worse, Darcy's opinion that any speed that is 20 mph over the speed limit is "reckless"—even when responding to an emergency—and that there is no reason for officers to ever reach 90 or 100 mph was never disclosed as one of his opinions during discovery [Doc. #73-1, 73-2]. The Court erred in admitting Plaintiffs' Exhibit 26 and any testimony related to this exhibit through Darcy.

**C. The court erroneously excluded evidence that plaintiff was not wearing his seatbelt and tested positive for marijuana.**

10.     At the summary judgment stage, Houston's expert testified by affidavit that the combination of marijuana, diabetic emergency and/or heart attack rendered plaintiff impaired enough to turn left without yielding to oncoming traffic [Doc. #65-02]. As Harriet Payne and other witnesses testified that Charles Payne always wore his seat belt, the fact that he was unrestrained at the time of the collision provides additional circumstantial evidence of his impairment. The Court erred in excluding this evidence.

4

## II.    The court erroneously charged the jury.

11.    The Fifth Circuit reviews challenges to jury instructions for abuse of discretion and affords the trial court great latitude in the framing and structure of jury instructions. *Trabucco v. Rivera*, 141 F.4th 720, 730 (5th Cir. 2025). On appeal, a party challenging jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations. *Id.* at 730. The Fifth Circuit will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law. *Id*. Even if the instructions are erroneous, this court will not reverse if it determines, based upon the entire record, that the challenged instruction could not have affected the outcome of the case. *Id.*

12.    That standard is easily met here due to the vast degree of erroneous instructions. The charge instructed the jury incorrectly on every single element of Plaintiffs' *Monell* claim, resulting in a dramatically reduced standard for recovery.

### A. Rather than merely reciting Plaintiffs' allegations, the instructions essentially made the conclusions that the Plaintiffs' *Monell* theories were valid.

13.    The Fifth Circuit Pattern Jury Charge instruction for municipal liability leads off with a description of what the plaintiff is ***alleging***:

> In addition to [his/her] claims against [officers/ officials], Plaintiff [name] is suing [specify municipality sued]. A [city/county] is not liable for the actions of its employees unless the constitutional violation was caused by a [city/county] policy or custom.

5

Pattern Jury Instructions §10.5.

14.    In contrast with the Pattern Jury Instruction, the Court's charge went well past a brief restatement of Plaintiffs' allegations, and instead amounted to commentary suggesting that the Court had already made the findings, usurping the jury's role as fact-finder. *See* Jury Instruction No. 7.

**B. The court permitted instructions and questions regarding theories of liability that were never pled nor tried by consent.**

15.    The only *Monell* theories identified in Plaintiffs' complaint were: a) a persistent widespread practice of officers driving at double the speed limit when not responding to an emergency; b) two-hour charge policy which requires officers to drive recklessly; c) not disciplining or overseeing the driving of any HPD officer; d) a policy permitting and encouraging officers to operate with complete disregard to traffic laws [Doc. #1].

16.    Plaintiffs abandoned the two-hour charge theory in the Joint Pretrial Order [Doc. #91]. Plaintiffs abandoned their failure to discipline theory during trial.

17.    But Plaintiffs described the policy/custom theory in the Joint Pretrial Order as "This policy permits officers to drive at whatever speed they see fit including at well over double the speed limit no matter what the reason for their driving including driving back to a station to fill out a report or just on patrol and even when no emergency is needing to be responded to" [Doc. #91 at 5].

18.    Yet the charge identified "The City of Houston's policy, practice, and

custom does not require officers to follow posted speed limits when not responding to an emergency, but acquiesces to and permits officers to drive at reckless speeds of over 20 mph over posted speed limits both when responding to and when not responding to an emergency." *See* Jury instruction No 7. This *Monell* theory—which alleges Houston's facially-constitutional written policy is defective merely because it lacks detail—was never pled in the complaint or the joint pretrial order.

19.     In the same vein, the training theory that Houston failed to train its officers to follow posted speed limits when not responding to an emergency, and failed to train officers not to exceed 20 mph over posted speed limits during an emergency were not part of the complaint or the joint pretrial order. The complaint alleged "Officers were never trained in proper safe driving techniques and safe driving speeds when not responding to active emergencies. Instead, officers are taught through their training and in their day-to-day functions within the police force that they are to react quickly and with reckless disregard to the safety of others by driving without lights and sirens and driving at reckless speeds even when they are simply driving around" [Doc. #1 at ¶71].

20.     There was no instruction on supervision. The jury was not told what Plaintiffs' supervision theory was. The Complaint tied supervision to discipline, asserting that "officers are never pulled over or held accountable in any way for their unsafe driving habits" [Doc. #1 at ¶8]. The Joint Pretrial Order amended Plaintiffs'

supervision theory to assert that HPD lacked an auditing system to monitor the officer's driving speeds [Doc. #91 at 5].

21.    The theories submitted to the jury were not supported by the pleadings. They should not have gone to the jury. This is the exact switcheroo Fifth Circuit precedent prohibits. *See Jackson v. Gautreaux*, 3 F.4th 182, 188–89 (5th Cir. 2021); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) ("Piotrowski's specification of the policies she challenges has been vague"); *Boyd v. City of Houston*, 548 Fed. Appx. 100(5th Cir. 2013) (unpublished) (vacating judgment finding the city liable for violating Plaintiffs' Fourth Amendment rights where the parties had not identified the policies or customs at issue with precision, and as a result, the jury could have found the city liable without finding the requisite deliberate indifference under 42 U.S.C.S. § 1983).

**C. The court failed to charge the jury regarding who the policymaker is.**

22.    The Fifth Circuit Pattern Jury Charge expressly recognizes that Policymaker Status is a question of law. Fifth Circuit Civil Pattern Jury Instructions § 10.5 (citing *Tharling v. City of Port Lavaca*, 329 F3d 422, 427 (5th Cir. 2003)). The Court did not decide who was the policymaker as a matter of law, nor did the charge instruct the jury who the policymaker was. This was error. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578–79 (5th Cir. 2001) ("the City never insisted that Piotrowski identify a municipal policymaker who could be held responsible, through

actual or constructive knowledge, for enforcing a policy that caused Piotrowski's injuries.").

23.    Particularly so because, as stated in Houston's JMOL [Doc. #108] and renewed JMOL [Doc. #136], Plaintiffs abandoned the actual policymaker under City Ordinance—the Chief of Police—in favor of Captain Duplechain [Doc. #91 at 5 ("As admitted by the testimony of Defendant's expert and policymaker, Captain Duplechain…")]. But the evidence established that Captain Duplechain cannot be the policymaker [Docs. ##108, 136].

### D. The charge used the wrong standard for a Fourteenth Amendment violation.

24.    For a Fourteenth Amendment substantive due process violation to have occurred, the actions must "shock the conscience". *Estate of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244–45 (5th Cir. 2025). This is a deliberately high bar. *Id.* Only the most egregious official conduct can be said to be arbitrary in the constitutional sense. *Id.* Conduct shocks the conscience only when it is so brutal and offensive that it did not comport with traditional ideas of fair play and decency. *Id*.

25.    In some circumstances, a deliberate indifference standard has been held to satisfy the shocks the conscience standard. But the Supreme Court held:

> To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference

to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." *Daniels v. Williams*, 474 U.S., at 332, 106 S.Ct., at 665. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853–54 (1998).

26.     The charge, however, instructed the jury that a Fourteenth amendment substantive due process violation can occur merely if Officer Cabrera was driving with deliberate indifference. The Fifth Circuit has never held that the lower standard applies in a motor vehicle collision; in a single unpublished decision the Fifth Circuit assumed without deciding the lower standard applied, but ultimately held that the driver's conduct did not meet even the lower standard. The most recent case from the Fifth Circuit rejected the lower standard when a deputy intentionally rammed a suspect's car. *Estate of Parker*, 140 F.4th at 244–45. The trial court erred in using the lower standard.

27.     What is more, the deliberate indifference instruction was predicated

upon *either* knowledge of "a substantial risk of serious harm" or "a violation of constitutional rights". *See* Jury Instruction No. 7. In other words, the instruction allowed the jury to find deliberate indifference to a constitutional violation even if Officer Cabrera had not been aware of any constitutional violation.

### E. The charge used the wrong standard for deliberate indifference of the policymaker.

28.    The charge defined "deliberate indifference" using the same subjective standard as that for the underlying constitutional violation, when the standard for deliberate indifference for a municipality is an objective standard. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 210 (5th Cir. 2011) ("the standards of deliberate indifference for the underlying constitutional violation and the Monell showing are different."). The objective deliberate indifference standard "considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). Houston objected to the charge for this reason at the charge conference.

29.    Furthermore, the instruction for deliberate indifference should have included the requirement that ordinarily a finding of deliberate indifference requires a showing of multiple other similar constitutional violations. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not

11

suffice" to prove municipal culpability"); *Henderson v. Harris Cnty., Tex.*, 51 F.4th 125, 131 (5th Cir. 2022) (recognizing for deliberate indifference for failure to train, plaintiffs must establish a pattern of similar constitutional violations by untrained employees).

30.     Plaintiffs believed that they did not have to establish prior acts. Plaintiffs asserted in the joint pretrial order that "Plaintiffs do not have to establish a custom through prior similar incidents" [Doc. #91 at 5]. The jury charge reflects their erroneous belief.

## F. The charge incorrectly instructed the jury regarding moving force causation

31.     The charge diluted the standard for moving force to "acquiesces to and permits." Jury instruction No. 7. This is not the standard; allowing something is not the same as causing something. *Mansfield v. Williamson Cnty.*, 30 F.4th 276, 279 (5th Cir. 2022). A plaintiff must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation. *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). The charge essentially allowed the jury to find liability based on alleged acquiescence in speeding, or a de facto policy, which is a diluted ratification theory of liability that was neither pled nor proven.

## G. The court excluded evidence and testimony regarding applicable transportation code provisions as something that the Court would instruct the jury on, but refused to instruct the jury on applicable provisions

32.     The district court's refusal to give a requested instruction constitutes

reversible error only if the instruction: (1) was a substantially correct statement of law; (2) was not substantially covered in the charge as a whole; and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim. *Trabucco v. Rivera*, 141 F.4th 720, 731 (5th Cir. 2025).

33.     Because this was a car accident and the behavior of each driver was subject to the Rules of the Road in the Texas Transportation Code, the governing Transportation Code Provisions were critical to the jury's ability to weigh the evidence. Specifically, the regulations involving speed, turning left, and certain provisions applicable to police officers. *See* Tex. Transp. Code §§ 545.152, 545.351, 545.352, 545.365, 546.001. The Court prevented Houston from presenting evidence regarding these provisions because the Court would instruct the jury regarding applicable law, but then refused to give the jury the instruction regarding these provisions that Houston tendered [Doc. #111 Houston's proposed jury instruction #9]. Most critically, the jury was not allowed to hear about the Texas Transportation Code provision that exempts patrol officers from speed limits. This is a matter of state law, not HPD policy.

## H. The charge submitted more than one theory of liability in a single question, which was changed from "and" to "or" in the middle of deliberations.

34.     At Plaintiffs' request and over Houston's objection, Plaintiffs training

and supervision theories were submitted in a single question with the conjunction "and" when the jury asked whether this "and" meant the claim failed if the jury did not find **both** training and supervision, the Court changed the instruction to "or" mid-deliberation, over Houston's objection.

35.    Because each policy must be the moving force, this was error. *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) ("Further, each of the cited customs concerns a discrete police department program or area of decision-making, and each invokes separate aspects of the policy issue. Finally, each alleged policy may have had a distinct impact as the moving force…").

## III.    Houston was unfairly surprised

36.    The entire case was an ambush. Houston was forced to defend vague, mercurial theories that were evidently developed on the fly, and never disclosed during discovery. Three examples:

### A. The Mighty Morphin *Monell*

37.    Plaintiffs' *Monell* theory morphed dramatically between the complaint and the jury charge. No more proof of this fact is needed than to compare the *Monell* theories as discussed in the Complaint, the summary judgment briefing, Houston's JMOL, and then compare it to the charge. The *Monell* custom or policy that was ultimately submitted to the jury—"policy, practice, and custom does not require officers to follow posted speed limits when not responding to an emergency, but rather acquiesces to and permits officers to drive at reckless speeds of over 20 mph

14

over posted speed limits both when responding to and when not responding to an emergency"—was a complete surprise. Indeed, the first time it ever appeared in print was the morning of the charge conference, when Plaintiffs submitted the proposed "joint" charge in Doc. #109. Plaintiffs had not even identified this theory in any draft provided to Houston's counsel over the weekend. [*See* Exhibit A, hereto].

### B. Houston was ambushed by opinion testimony from Darcy.

38.    And much of Plaintiffs' ambush theories were elicited through Christopher Darcy. Houston moved to strike him as a witness pre-trial because one of his reports was not disclosed during the discovery period [Doc. #57]. Three days before Houston's summary judgment deadline, Plaintiffs produced a new report from Darcy that espoused a theory that Houston's inconsistent discipline amounted to no discipline at all. But Plaintiffs abandoned any discipline theory at trial.

39.    Instead, at trial, Plaintiffs used Darcy to discuss the AVL data, which Darcy did not consider for his reports. It was a complete surprise to Houston that Darcy would discuss this data or espouse the opinion that it is per se reckless to travel at speeds of 90 or 100 mph even during an emergency response.

### C. Plaintiffs "lost moments" damages theory was never disclosed and only mentioned for the first time in closing.

40.    Finally, Plaintiffs failed to disclose their method of calculating damages during discovery. Houston's limine #s 5-6 requested that the judge exclude any evidence for their damages because Plaintiffs' failed to provide any computations or

supporting documents during discovery, resulting in unfair prejudice to Houston [Doc. #91-9]. The court denied Houston's motions in limine #s 5-6.

41.    During closing, Plaintiffs' counsel based their request for damages on "lost moments". Plaintiffs did not disclose this until minutes before closing. Had Plaintiffs disclosed during discovery that they were measuring damages based on "lost moments", Houston could have offered and/or elicited evidence from actuarial tables about Charles Payne, Sr.'s life expectancy, or elicited additional testimony from Dr. Totz or other experts regarding Charles Payne's life expectancy given his severe coronary artery disease. But Plaintiffs never disclosed this method of calculating damages in their required disclosures. This was ambush.

## IV.    The verdict was against the great weight of the evidence

42.    The Court of Appeals cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence. *Trabucco v. Rivera*, 141 F.4th 720, 727 (5th Cir. 2025). That is, only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict. *Id.*

43.    Houston incorporates by reference the arguments made in its JMOL and renewed JMOL.

### A. The great weight of the evidence is that Charles Payne, Sr. caused the accident while failing to yield the right of way to oncoming traffic while making a left turn with an obstructed view.

44.    The overwhelming weight of the evidence is that this was a car

accident, caused by Charles Payne for making an illegal left turn, without yielding to oncoming traffic when his view was obstructed and he was impaired by diabetic emergency, heart attack, and marijuana use.

- Mr. Irwin admitted that if Officer Cabrera had remained at 70 mph, but not swerved, the accident would not have occurred.
- All the witnesses echo state law that a party making a left turn has a duty to yield to oncoming traffic.  Tex. Transp. Code § 545.152
- Mr. Irwin admitted that if Charles Payne had stopped for just 2 seconds the accident would not have occurred.

45.     This accident had nothing to do with HPD policy. This accident does not reach a constitutional threshold. *See Coon v. Ledbetter*, 780 F.2d 1158, 1163 (5th Cir. 1986); *Bell v. Hicks*, No. CIV.A. H-12-1979, 2012 WL 3276728, at *2 (S.D. Tex. Aug. 9, 2012); *Ferguson v. Tex.*, No. 3:03-CV-407-G, 2003 WL 22329036, at *2 (N.D. Tex. Oct. 6, 2003); *Jones v. Larmartiniere*, No. CIV.A. 09-359-JVP-DL, 2009 WL 2136176, at *1 (M.D. La. July 14, 2009).

46.     Absent underlying constitutional violation, there can be no municipal liability. *Smith v. City of Dallas*, 3:07-CV-1413-O (BH), 2008 WL 11350015, at *11 (N.D. Tex. Nov. 18, 2008) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

### B. The overwhelming weight of the evidence is that Charles Payne died from complications of his heart attack.

47.     The overwhelming evidence was that Charles Payne suffered a heart attack before or at the time of the collision. The heart attack was evident on EKG.

The heart attack was not caused by the collision; it was caused by severe coronary artery disease, which included 90% stenosis in his widowmaker artery.

48.     After the collision, CPR was performed which broke Charles Payne's sternum, transecting his aorta. From the evidence that Charles Payne continued to have a pulse and remained combative with the ambulance crew for nearly 30 minutes after the collision, no reasonable juror could have believed that Charles Payne's aorta was severed during the collision. No reasonable juror could have believed that Charles Payne's death resulted from any HPD policy.

### C. The overwhelming evidence is that Officer Cabrera did not violate any 14th Amendment substantive due process rights.

49.     The evidence conclusively established that Cabrera's speed was high for mere seconds and, although he was not aware of his speed at the time, he did not perceive that he was traveling significantly faster than other motorists around him. *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) ("Where a citizen suffers physical injury due to a police officer's negligent use of his vehicle, no section 1983 claim is stated. It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's intentional misuse of his vehicle.")

### D. The overwhelming evidence is that Houston exceeded TCOLE requirements for training.

50.     Furthermore, compliance with state requirements is a factor counseling against a failure to train finding. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). When officers have received training required by Texas law, the

plaintiff must show that the legal minimum of training was inadequate. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010) (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992). Here, Officer Cabrera testified that he exceeded minimum TCOLE training requirements. Plaintiffs presented no evidence that TCOLE requirements are inadequate.

### E. Plaintiffs presented no evidence of moving force.

51.    There is no unconstitutional policy or custom; a non-existent policy cannot cause an injury. *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 457 (S.D. Tex. 2021).

52.    In any event, Mr. Darcy only testified that the policy allowed "officers to speed when they are not justified in driving excessive speeds"; this is not the standard for moving force; allowing something is not the same as causing something. *Mansfield v. Williamson Cnty.*, 30 F.4th 276, 279 (5th Cir. 2022). Mr. Darcy also testified that speeds up to 20mph over speed limit is a good and safe policy. The only evidence of customary speed—which Plaintiffs' expert agreed was trained/considered in most department policies/training—was that the customary flow was 55mph from Captain Duplechain.  Plaintiffs presented no evidence that the speed was reckless for the circumstances.

53.    Additionally, testimony from Irwin that had Cabrera gone slower for 5 seconds, he would have been down the street and Payne would not have hit him

relates to a mere condition, and does not suffice for proximate cause and cause in fact.

54.    Furthermore:

- Officer Cabrera testified to his understanding that he was required to obey all speed limits.
- Officer Cabrera testified that he was aware of one other MVA in which the officer was disciplined, and criminally indicted.
- Officer Cabrera testified was unaware of any policy that officers can driver recklessly or that discipline was lax. *James v. Harris Cnty.*, 577 F.3d 612, 618 (5th Cir. 2009) (holding that to establish moving force plaintiffs had to adduce evidence that the individual officer was aware of it)

## V.    The damages awarded were excessive

55.    A jury cannot just pick a number and put it in in the blank. But that is evidently what the jury did here. For the jury to award $6 million to Harriet Payne is grossly excessive, particularly in light of the fact that the jury was not allowed to consider their 21-year separation or Charles Payne, Sr.'s periods of incarceration.

56.    Similarly, the award of $1 million to each of Charles Payne, Sr.'s children is excessive. Particularly in light of the fact that the jury was not allowed to hear that Harriet Payne alleged in her divorce petition that he abandoned the family. Robert Payne did not even testify at all because he is currently incarcerated, which the jury was not allowed to hear. Cavin Payne spent roughly 26 years away from the family because he was incarcerated, and in fact, did not see his father at all for the last 18 months, which the jury was also not allowed to hear. There is simply no way the jury would have awarded these figures had they heard the truth behind these

individuals' relationships with Charles Payne, Sr.

**Conclusion**

For the reasons stated above, Houston respectfully requests that this Court award a

new trial.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

Date:  December 19, 2025          By:  _/s/ Christy L. Martin_
Chief, Torts/Civil Rights
ATTORNEY IN CHARGE
SBN:  24041336
FBN:  754168
832.393.6438
christy.martin@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6259 Facsimile

**_Attorneys for Defendant_**

## CERTIFICATE OF SERVICE

On this 19th day of December 2025, a true and correct copy of the foregoing document was served upon all parties through their attorneys of record, by electronically filing same with the District CM/ECF system, in accordance with the Rules, and/or alternatively by e-mail or facsimile transmission, to all counsel of record.

*/s/ Christy L. Martin*
CHRISTY L. MARTIN